IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNT OF JOHN E. LEE, AS EXECUTOR OF CARRIE E. DWIGHT, DECEASED.

*Will — a bequest of " all debts, dues and demands," held by the testatrix against her executor and his wife — when it does not include a bond and mortgage due to the testatrix by the executor's wife.*

In April, 1885, Emma A. Lee executed her bond and mortgage upon certain real estate, for a part of the purchase-price thereof, to Edward J. Farnum, her husband, John E. Lee, joining in the mortgage, and in the bond as a surety. Farnum assigned the bond and mortgage to Carrie E. Dwight, in 1887, and, in 1888, Emma A. Lee and John E. Lee, by a warranty deed containing a covenant against incumbrances, conveyed the premises to S. E. Crittenden, who, at a subsequent date, paid the purchase-price, except $1,200, which was due on the bond and mortgage.

In 1889 Carrie E. Dwight died a widow, leaving one child and an estate worth about seven thousand dollars, and also leaving a will, which contained the following clause: " I will and bequeath to John E. Lee all debts, dues and demands of name, nature or kind soever, I hold against him and his wife," John E. Lee being named as the executor thereof. Exclusive of the bond and mortgage Mrs. Lee was indebted to Mrs. Dwight, at the time of her death, in the sum of $225, and Mr. Lee in the sum of seventy-five cents. Mrs. Dwight, whose bequests to her relatives were insignificant, knew that Mrs. Lee had sold the mortgaged premises to Crittenden.

Upon a judicial settlement of his account as executor John E. Lee claimed that, under the words of the bequest to him, the bond and mortgage in question passed to him.

*Held,* that this position was untenable.

That, while the language of the bequest was broad enough to cover the bond and mortgage, it was the evident intention of the testatrix to forgive the Lees only the smaller debts of $225 and seventy-five cents.

That, under the circumstances, she would naturally look to Crittenden for payment of the bond and mortgage, and that it was unlikely that she intended to give one-quarter of her small estate to a stranger to the prejudice of her child.

APPEAL by John E. Lee, executor of Carrie E. Dwight, deceased, from that part of the decree of the Surrogate's Court of the county of Allegany, entered in the above-entitled matter on the 9th day of February, 1892, which directed and decided that John E. Lee was not entitled to have or receive the sum of $1,262, paid to him by Emma A. Lee on the Edward J. Farnum bond, as and for his own use as legatee under the will of Carrie E. Dwight; and, as directed, that the said John E. Lee must account for said sum

of $1,262 so received by him to be distributed as assets of said estate; and, as directed, John E. Lee, as executor, to pay unto Charles Day, as guardian of Joseph N. Dwight, the said sum of $1,262, or any portion thereof, with notice that the said appellant intended to bring up for review, upon said appeal, the orders and decisions entered in said proceedings and filed in the said surrogate's office on the said 9th day of February, 1892.

The question presented by this appeal involved the construction of the will of Carrie E. Dwight, who on the 11th day of July, 1889, then residing at Wellsville, N. Y., made and published her last will and testament, and in the month of October following died. The will was duly admitted to probate; it provided for the purchase of a lot in the cemetery; the erection of a suitable headstone; the payment of funeral charges and expenses of administering the estate; the payment of her debts, and bequeaths her property as follows: "I will, devise and bequeath to Effie Dwight my organ, family Bible, one set of silver teaspoons, one bed and bedding. I will and bequeath two oil paintings and willow rocking-chair to Mrs. Nett Goff, of Potter county, Pa. I will and bequeath to my sister, Mrs. Nina Hulbert, all my wearing apparel. I will and bequeath to John E. Lee all debts, dues and demands of name, nature or kind soever I hold against him and his wife, my trunk, and any keepsakes he may wish. I will, devise and bequeath to my dear and beloved son, Joseph N. Dwight, my gold watch and chain, best bed-room set and bed complete, silver-plated knives and forks, and all the rest, residue and remainder of my estate, except the remainder of my household furniture, which is to be divided as my executor thinks best, or sold. In case the same is sold, the proceeds to belong to my son." The will then provides for the appointment of a guardian to take charge of the property for the son and invest the same, and pay to him yearly, or oftener, the interest for his education and support, and appoints John E. Lee executor.

The surrogate, before whom the proceedings for the judicial settlement of the accounts of the executor were taken, found, among other things, that on the 3d day of April, 1885, Edward J. Farnum conveyed to Emma A. Lee, the wife of John E. Lee, certain premises situated in the village of Oswayo, Potter county, Pennsylvania by warranty deed.

That Emma A. Lee and John E. Lee on the same day gave their bond conditioned for the payment of $1,500, with interest, being a portion of the purchase-price of the land, and to secure the payment thereof executed a mortgage on the premises to Edward J. Farnum, which bond and mortgage were assigned to Carrie E. Dwight, the testatrix in 1887.

That Emma A. Lee subsequently, in 1888, sold the premises in question to S. E. Crittenden by a warranty deed containing covenants of seizin, lawful power and authority to convey, against incumbrances, and by way of further assurance of title.

That at the time of the death of Carrie E. Dwight, the testatrix, John E. Lee and Emma A. Lee were indebted to her on the said bond given to E. J. Farnum in the sum of $1,200, and interest, and subsequently to the death of the said Carrie E. Dwight, Emma A. Lee paid to John E. Lee, as executor, the full amount of her indebtedness upon said bond, and upon the same day S. E. Crittenden paid to Emma A. Lee the balance of the purchase-price of the premises.

That Emma A. Lee was indebted to Carrie E. Dwight on a contract of lease in the sum of $170 at the time of the making of the will and at the time of the latter's death, and also at the time of Carrie E. Dwight's death, upon a chattel mortgage in the sum of fifty-three dollars.

As between Emma A. Lee and John E. Lee the latter was only a surety upon the bond executed to Farnum, and there existed no personal claim on the part of Carrie E. Dwight against S. E. Crittenden for the amount due upon the bond.

The decree was entered February 9, 1892, and determined that the sum secured to be paid by the bond and mortgage given April 3, 1885, by John E. Lee, the executor, and his wife, Emma A. Lee, to Edward J. Farnum, and by Farnum assigned to the testatrix, did not belong to the said John E. Lee, and that he should account for the same as an asset of the estate.

It appears, by the decree, that, after allowing for all the increase, the total amount of the property to be distributed, including the bond and mortgage in controversy, was $5,994.20.

Mrs. Dwight was, at the time of making her will, and at her death, a widow. Joseph was her only child and only next of kin. Her estate was worth about seven thousand dollars.

Mrs. Lee was indebted to Mrs. Dwight at the date of the will in the sums of $170 and fifty-three dollars in addition to her indebtedness upon the bond aforesaid. Mr. Lee owed the deceased at the time of her death seventy-five cents. There was unpaid upon the bond and mortgage at the date of the inventory, $1,246.

*Caleb S. Hall*, for the appellant.

*Clarence A. Farnum*, for the respondent.

Lewis, J.:

The question is, were the bond and mortgage included in the bequest to John E. Lee?

It is true, as contended by the appellant's counsel, that the language of the will is sufficiently broad to carry the bond and mortgage to Lee, but we are at liberty in giving construction to this provision to look at the surrounding circumstances, the situation, condition in life of the testator, the amount of the estate and the condition of those naturally dependent upon her bounty.

Where there are two equally probable interpretations of the language of a will, "that one is to be adopted which prefers the kin of the testator to strangers." (*Quinn* v. *Hardenbrook*, 54 N. Y., 83; *Wood* v. *Mitcham*, 92 id., 375.)

Words in general, whether technical or popular, are to be taken in their plain and usual sense, unless a clear intention to use them in another sense can be collected and that sense ascertained. (Schouler on Wills, § 472.)

A broad or restricted meaning may be given words to arrive at the intention. The terms that are used in a will are to be construed according to the ordinary acceptation of language in the transactions of mankind. (Williams on Executors, § 1080.)

The bequests to Effie Dwight, who, we assume, was a relative of the deceased, and to her sister and Mrs. Goff, were of small value.

She was providing in her will for the education and support of her only child, twelve years of age. The amount that she could leave him in any event was small; his welfare was, undoubtedly, the chief thing she had in mind. No reason appears why she should give to Mr. Lee, who, so far as appears, had no claim upon her bounty, nearly one-fourth of her entire estate. Had she intended

to bequeath to Lee the bond and mortgage she would naturally have mentioned them specifically. A person learned in the law would have understood that the words used included the bond which represented the indebtedness and carried the mortgage given as collateral to it, but it may well be doubted if Mrs. Dwight so understood it.

Mrs. Dwight knew that the real estate upon which the mortgage was a lien had been transferred to Crittenden. He had, three months before she made her will, paid interest thereon to Mr. Lee, the testator's agent. We assume that he paid it to Mrs. Dwight as it was his duty to do. Knowing that Crittenden had purchased the land upon which her mortgage was a lien, and that he intended to pay the mortgage, she undoubtedly had been informed that he had retained from the purchase-price a sum equal to the amount of the mortgage, under the circumstances she would naturally look to him as the person to pay the mortgage, and not to Mr. and Mrs. Lee The language used in the bequest to Lee, to the comprehension of a person in the station of life of Mrs. Dwight, would include only the indebtedness of Mr. and Mrs. Lee mentioned, amounting to $200, and a small amount due from Lee. As she intended to make Mr. Lee the executor of her will she was willing to forgive him and his wife their indebtedness to her, but had not in mind, we think, to include the bond and mortgage. To hold that it includes the bond and mortgage excites surprise and inquiry as to the testator's reasons for giving so large a proportion of her estate to one having, so far as appears, no claim upon her bounty, to the detriment of a son whose welfare, we must assume, was a matter of solicitude to her. This construction makes the plan and purpose of the will harmonious.

The construction given to the will by the surrogate meets with our approval, and the decree appealed from should be affirmed, with costs to the respondent, to be paid out of the estate.

DWIGHT, P. J., and MACOMBER, J., concurred.

Decree of the surrogate of Allegany county appealed from affirmed, with costs to the respondent, to be paid out of the estate.